NAsn, C, J.
 

 Hie decision in
 
 Stanmire
 
 v.
 
 Taylor,
 
 made at this Term, governs this. The facts are substantially the same.
 

 John A, Powell purchased the premises in question at the commissioner’s sale in' 1838, at the price of $8,000, and paid $1,000 at the same time, and secured the payment of the balance by bond. At the time of the sale and making the first
 
 *215
 
 payment, lie took from tlie commissioners a certificate of the sale, on which was the endorsement of this payment. In 1811, he paid into the public treasury $100, in part payment of his bond. Subsequently, commissioners were appointed under the authority of the Legislature, to reduce these bonds, which was done by them, and the purchase money bid by Powell reduced to $1,500. Powell sold his right to the defendant, by deed, dated November, 1838. ■ When the commissioners made their reduction of the bond, they listed it as Powell’s land, and the defendant, Welch, executed new bonds for the sum of $1,500, which are still in the hands of the agent of the State. In October, 1853, the defendant, Welch, paid the agent, Mr. Siler, $281, and in .March, 1851, she paid to the agent the additional sum of $716.00f, in full of the first instalment upon her first bond. It thus appears that the State sold the land to Powell at public auction, at a very high price, before the alleged grant to Stanmire, and, since the passage of the Act of 1852, has received from the defendants nearly $1000 of the purchase money; and the bonds for the purchase money are still in the hands of her agent, for collection. The State
 
 had'no right to nnalie the grant to
 
 Stanmire/ for as is said in
 
 Stanmire
 
 v. Taylor, she was previously, by her contract and by her honor bound,
 
 to convey to another person.
 

 Pee Curiam,
 

 Judgment reversed, and
 
 venire de novo.